ANDERSON v. GREGG, ASSIGNEE, ET AL.

THE OHIO BUILDING CO. v. ANDERSON ET AL.

1. VENDOR'S LIEN NOT LOST BY TAKING COLLATERAL SECURITY.

The lien of a vendor on land sold by him, for the unpaid purchase-money, is not lost by the mere taking of collateral security for the payment thereof. If a distinct purpose to preserve and rely upon the lien is shown, it will remain. And such was the case here.

2. VENDOR'S LIEN HELD PRIOR TO THAT OF BUILDING CO.

Where such is the case, and no conveyance has been made of the land to a vendee, but only a contract made between the owner and the purchaser, by which the latter was authorized to execute to a building association a mortgage for not exceeding the value of houses to be erected thereon by the purchaser, who was then to execute to the vendor a second mortgage on the land to be prior to all liens and conveyances except the building association mortgages, and the purchaser contracted, without the knowledge or procurement of the vendor, with a building company to erect houses thereon, which was done, and a builder's lien placed therefor on the land, but the purchaser thereupon assigned the land to an assignee for the benefit of his creditors without having executed and delivered the mortgage provided for, the land having been before conveyed at the request of the purchaser to a trustee for his benefit, and the same was done with a stipulation by the purchaser and his trustee, that there was to be no other liens prior to that of the vendor thereon, other than the building association mortgages, in such case the lien of the vendor is prior to that of the building company.

ERROR to the court of common pleas of Hamilton county.

SMITH, J.

We state very briefly our views as to the legal questions involved in these very complicated cases, supposing them to be decisive of the rights of the parties.

*First*—We are of the opinion that when Anderson contracted to sell the 125 lots in Addyston to George W. Benjamin for $30,000, payable in ten equal installments with interest, and the payments to be secured, 1st, by a second mortgage on the property to be conveyed (the purchaser to be allowed to give a first mortgage to cover the cost only of 100 houses to be built thereon by the vendee within one year), and 2d, by certain collateral securities which were afterwards turned over to Anderson pursuant to the contract, that the provision for the taking of this collateral security did not of itself operate, either as to the lots embraced in the contract, which under a modification of the said agreement subsequently made by Anderson and Benjamin, were conveyed to a trustee for Benjamin, or as to those lots the title to which was retained by Anderson (said lots never having been conveyed by him), to waive the vendor's lien held by Anderson thereon, to secure the payment of the purchase money. The doctrine of the law, that the taking of collateral security for the payment of the purchase money, unpaid at the time of the conveyance of the land, is a waiver of the vendor's lien, seems to rest upon the idea that he thereby intends to look to the other security taken. If, however, a distinct purpose is shown to preserve the lien it will remain. It seems to us that the original contract and all of its modifications, recognize the fact that this lien for the purchase money is to be retained, and is not waived.

*Second*—On the agreed statement of facts, on which the judgment sought to be reviewed in case No. 1858 was founded, we are of the opinion that the decision of the court of common pleas, which found that the lien of Anderson on these lots which he had contracted to sell to Benjamin, but which had not been

conveyed by him, was superior to that of the mechanic's who under a contract with Benjamin alone had proceeded to erect buildings thereon, was correct. Anderson was the owner of the property as between himself and Benjamin, and he was entitled to be paid the amount of his purchase money, before Benjamin was entitled to a conveyance. The mechanic, dealing with the latter, and erecting buildings on the lots (without the knowledge or procurement of Anderson), stood in no better position than did Benjamin. The judgment of the common pleas in this case is therefore affirmed.

*Third*—The facts in case No. 1577 differ from those in 1858 principally in this : On January 10, 1890, a modification of the original contract of October 2, 1889, was made by Anderson and Benjamin, by which, among other things, it was provided, that the purchase money notes and the collateral securities were to be delivered to Anderson, and this was done. Anderson was to and did then convey to Benjamin forty-six lots (none of which are in question here), on which Benjamin was to build thirty-eight houses. Benjamin was authorized to give building association mortgages on those lots, for, not exceeding as to each such mortgage, the aggregate value of the houses upon the lots covered thereby ; and was to give Anderson mortgages on all the lots securing his $30,000 purchase money notes, second only to such building association mortgages. After Anderson had received such second mortgages on all of those forty-six lots, he was to convey to Benjamin thirty-eight additional lots selected by Anderson, upon which Benjamin should then construct houses, and should mortgage them back to Anderson, by mortgage second only to building association mortgages like those provided for as to the forty-six lots. And when Anderson had received the mortgages on the second batch of thirty-eight lots, he was to convey the remaining thirty-seven lots to Benjamin, who was to mortgage them back to Anderson as the others. These mortgages it was provided were to be delivered before October 2, 1890; and were to be " prior to all liens and conveyances except the building association mortgages."

On April 26, 1890, another modification of the contract was made by the parties thereto. The second batch of thirty-eight lots before mentioned was reduced to twenty-five, and those were to be divided into two sub-batches, one of which, of six designated lots was to be conveyed on receipt of the second mortgage on twenty-two of the lots already conveyed, and the other nineteen (including those in controversy in this case No. 1577), viz: lots ₍51, 54 and 90, were to be conveyed on receipt of second mortgages on the remainder of the lots before conveyed to Ware as trustee for Benjamin. Ware was a party to this, and in the contract it was again stipulated that there were to be no liens prior to Anderson's mortgage, other than the building association mortgages.

On May 28, 1890, Anderson conveyed those three lots to Ware, taking from Benjamin a stipulation reciting that the mortgages had not yet been delivered to Anderson, and if they should not be delivered, that Anderson might proceed as if the deed to Ware had not been made. As a matter of fact, the mortgage was not delivered until after Benjamin had assigned all his property to Gregg, and it was then worthless.

In the meantime, after the making of the original contract between Anderson and Benjamin, viz: October 2, 1889, Benjamin, on December 5, 1889, had contracted with the Ohio Building company for the construction of 100 houses on the lots mentioned in the contract, and on March 1, 1890, the Building company commenced the buildings on the lots in controversy in case No.1577, and they were completed July 9, 1890, and liens taken out thereon by the Building company. The principal controversy in this case is as to the rights of Anderson under his vendor's lien, if he has one, and of the Building company under its mechanic's lien, if it has one, to the proceeds of the sale of these lots.

We think that when the building contract was made, December 5, 1889, or when the work under it was commenced, March 1, 1890, Benjamin, with whom such contract was made, was not the owner of the property in any such sense as

to entitle the Building company to a builder's lien thereon as against Anderson, or against any lien which he then had, and as before stated, we think he had such a lien. The Building company could have no greater right as against Anderson, than Benjamin had, unless by the conduct of Anderson he had given the Building company some equitable right against him, so as to estop him from denying the validity of such claim. We see no element of that in this case. It is true that after the making of the building contract, and after the work under it was commenced, the original contract between Anderson and Benjamin was modified, but so far as we can see in no way to the prejudice of the Building company. But we think they had a right to change it as they did, and no conveyance having been made to Benjamin or his trustee till long after the work was commenced, the Building company was bound to take notice of the condition of the title, and assumed the risk in doing as they did.

Nor in our judgment did the conveyance of the lots in question by Anderson to Ware as trustee of Benjamin, on May 28, 1890, operate to deprive Anderson of his vendor's lien, or to so place the title in the trustee of Benjamin as to make the lien of the Building company superior to that of Anderson. It seems to us that these conclusions are sustained by the decision of the supreme court in the case of *Neil* v. *Kinney et al.*, 11 Ohio St., 58; the facts in which, in many respects, are very similar to those in this case.

The conclusion at which we have arrived will require a modification of the judgment of the court of common pleas, giving the lien of Anderson priority to that of the Building company.

*Wm. Worthington,* for Anderson.

*Wm. Oldham, contra.*